UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
:
SAMUEL SANEAUX,
:
               Petitioner,                  07-cv-7585 (CSH)
:                03-cr-781 (CSH)
    -v.-
:
UNITED STATES OF AMERICA,          **MEMORANDUM OPINION
AND ORDER**
:
               Respondent.
:
------------------------------------x

HAIGHT, Senior District Judge:

Petitioner Samuel Saneaux moves *pro se* pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct the sentence imposed upon him by this Court upon his conviction following a jury trial before this Court in a criminal case bearing Docket Number 03 Cr. 781. For the reasons that follow, Saneaux's motion will be denied.

## I. BACKGROUND

On May 6, 2005, the jury returned a verdict convicting Saneaux on Count One of a three-count superseding indictment which charged him with violating 18 U.S.C. § 371 by conspiring to accept bribes in connection with the assignment of federally subsidized housing, in violation of 18 U.S.C. § 666(a)(1)(B). The jury was unable to agree on the other two counts and a mistrial was declared. Following his conviction, Saneaux moved for a judgment of acquittal, and alternatively for a new trial under Rule 33. The Court denied that motion in an opinion reported at 2005 WL 2875324 (S.D.N.Y. Nov. 1, 2005) ("*Saneaux I*"), familiarity with which is assumed. It is sufficient for present purposes to say that at the relevant times, Saneaux was the manager of Andrews Plaza,

a federally funded and subsidized seven-building rental apartment house complex in the Bronx. Saneaux worked in the office on-site, and was subject to minimal supervision and oversight by his corporate employer, Metro Management ("Metro"), a real estate management firm, and by the federal Department of Housing and Urban Development ("HUD").

The government did not retry Saneaux on the counts where the jury could not agree. On January 1, 2006, the Court sentenced Saneaux on the one count of conviction to a term of incarceration of 27 months, followed by a two-year term of supervised release. On February 15, 2006, Saneaux filed a timely notice of appeal from the judgment of conviction. On March 3, 2006, the Clerk of this Court sent the record on appeal to the Court of Appeals. The docket sheets in this Court recite that on July 25, 2006, Saneaux moved in the Court of Appeals to withdraw his notice of appeal. The Court of Appeals granted that motion in an order entered on July 28, 2006. Saneaux was released from custody on April 24, 2007. His term of supervised release ended without incident on April 23, 2009.

## II. THE PRESENT MOTION

Saneaux's § 2255 motion was received in the Court's Pro Se Office on July 24, 2007, within one year of the Court of Appeals' July 26, 2006 order granting Saneaux's motion to withdraw his direct appeal. In these circumstances, the government correctly concludes that the present motion is timely. *See* § 2255(f).

In support of his motion, Saneaux asserts the following claims: (1) this Court erred in admitting the testimony of a prosecution witness, Julisa Carcano,[1] a receptionist and assistant

---

[1] Saneaux's motion papers refer to this individual as "Julisa Rivera," which was Carcano's married name. She was sworn as a witness under the name Carcano. I refer to this witness in text as "Carcano."

manager who worked for Metro at the Andrews Plaza complex; (2) the Court failed to properly instruct the jury on the admissibility of Carcano's testimony; (3) Carcano committed perjury at the trial; (4) Saneaux received ineffective assistance of counsel in connection with counsel's failure to (a) move for a mistrial based on the Court's error in allowing Carcano's testimony, and (b) subpoena Saneaux's co-workers and HUD representatives; and (5) the government engaged in prosecutorial misconduct by failing to disclose information about the responsibilities of another government witness, a HUD employee named Carol Maitland.[2]

### III. DISCUSSION

Were it not for Saneaux's claims of ineffective assistance of counsel, it is clear that the other claims are procedurally barred because they were not raised on direct appeal. "A § 2255 petition may not be used as a substitute for direct appeal." *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) (citation omitted). Because that is so, a § 2255 petitioner procedurally forfeits a claim that could have been raised on direct appeal "unless he can show (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." *Sapia v. United States*, 433 F.3d 212, 217 (2d Cir. 2005) (citation and internal quotation marks omitted). The second test is not implicated; Saneaux does not claim actual innocence. As for the first, the Supreme Court has held that "'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." Moreover, "[a]ttorney ignorance or

---

[2] Saneaux submitted his *pro se* motion on form AO 243 (Rev. 5/85). The government filed a 27-page opposition brief dated April 6, 2009, which was refiled and entered electronically on the docket on May 13, 2009. Saneaux applied by letter to the Court dated June 1, 2009 for an extension of his time, to and including July 15, 2009, to reply to the government's brief. The Court granted that application by an endorsed order dated June 4, 2009. A copy of that order was mailed to Saneaux at the Bronx address appearing on his letter. No further submission was made by Saneaux. The Court decides the motion on the previous submissions.

inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citations and internal quotation marks omitted) (emphasis in original). Those propositions preclude Saneaux from asserting claims (1), (2), (3) and (5) as summarized in Part II., *supra*.

However, where a defendant in a criminal case collaterally attacks his conviction, the proposition that his attorney acts as his agent is subject to the important qualification that "cause" under the cause and prejudice test may be established by counsel's ineffective assistance, a non-forfeitable claim that Saneaux also asserts in the case at bar. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."). When a defendant asserts ineffective assistance of trial counsel, the court inquires into whether counsel's performance "fell below an objective standard of reasonableness and whether the defendant was prejudiced by counsel's deficient acts or omissions." *Sapia*, 433 F.3d at 218. "Prejudice" in this context requires a defendant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). My inquiry in this case focuses upon the errors Saneaux asserts his trial counsel made. I set forth in order Saneaux's claims and the Court's analysis. The page references are to Saneaux's motion.

### Claim

Counsel failed to move for a mistrial after Carcano competed her testimony. "[O]nce Carcano's testimony was completed and the Government failed to meet its burden under the Court's

prerequisite, counsel failed to move for a mistrial after Carcano's testimony was completed." Page 5, ¶ C. The reference to a "prerequisite" is apparently derived from Saneaux's earlier assertion that the Court allowed Carcano's testimony to be admitted, over defense counsel's objection, "but admonished that if the Government failed to show that Carcano's testimony was based on direct knowledge and tied to the charges before the Court, a mistrial would be granted. Upon completion of Carcano's testimony, no mistrial was granted even though the Government failed to meet the Court's prerequisites." Page 5, ¶ A. Further insights into this claim may be gleaned from Page 6, ¶ D, where Saneaux asserts Carcano perjured herself at trial by testifying "to having direct knowledge of the crimes alleged," since Saneaux "was charged with crimes that occurred after 2001, at the offices at the housing complex," and Carcano "in fact did not work at that office after 2000."

### Analysis

Julisa Carcano was the next to last witness the government called on its case in chief. Her testimony is contained on pages 886-911 of the trial transcript ("Tr."). She testified that as an employee of Metro, she worked at the Andrews Plaza from September 1997 to January 2000, first as a receptionist and then promoted to assistant manager in July 1999, reporting to Saneaux, the complex manager, Tr. 886-87. Carcano transferred to the Metro office in January 2000. Tr. 890. As the result of her duties at the Andrews Plaza apartments, Carcano was familiar with the procedures applicants for apartments had to follow and the documents – applications and the waiting list log – which the process generated, and described them at Tr. 891-93, including testimony that the waiting list was exclusively maintained by Saneaux, Tr. 892. This was admissible background evidence, offered to assist the jury in understanding the manner in which apartments at Andrews Plaza were applied for and granted. The principal thrust of the cross-examination of Carcano by

Saneaux's counsel, Tr. 895-909, was to challenge her credibility and bias, but for reasons unrelated to the dates Carcano worked at Andrews Plaza; counsel did not suggest that Carcano might have been unfamiliar with the application procedures in effect during 2001. I have read Carcano's entire testimony with care. The transcript contains no defense objections or Court-imposed "prerequisites" to the admissibility of her evidence. In consequence, there is no discernible basis upon which defense counsel could have moved for a mistrial at the conclusion of Carcano's testimony. His failure to do so does not constitute ineffective assistance of counsel.

**Claim**

Counsel failed to subpoena Saneaux's "immediate supervisor at Metro Management who had direct supervision and knowledge of the operations and management of the Andrews Plaza apartment complex." Page 8, ¶ 2.

**Analysis**

The Metro supervisors worked at the Metro offices, at a different location. Saneaux does not identify by name any Metro witness(es) he believes counsel should have subpoenaed, or describe what exculpatory testimony those witness(es) were in a position to give. That is perhaps not surprising, since in *Saneaux I*, I had occasion to observe: "Saneaux was subjected to minimal supervision and oversight by his corporate employer, Metro, a real estate management firm, and by agents of HUD. In consequence, Saneaux was able to run Andrews Plaza as something resembling a personal fiefdom." 2005 WL 2875324, at *1. Saneaux does not demonstrate that his counsel's refraining from calling another Metro employee as a witness constitutes ineffective assistance of counsel.

### Claim

Counsel failed to subpoena "the HUD representatives that were directly responsible for the auditing and supervision of the housing complex and Metro Management." Page 8, ¶ 3. Saneaux expands upon this claim of ineffective assistance by arguing that when the government called Carol Maitland, a HUD supervisor, as a trial witness, "it was disingenuously presented to the jury that Maitland was in [sic] the HUD supervisor that had direct responsibility for the supervision of HUD personnel responsible for conducting the audits and Government administration of Metro Management operations"; Maitland "was not the HUD Supervisor at during [sic] the time of the alleged bribery," when in fact "she only assumed that position shortly before trial," and Saneaux was denied effective assistance when his counsel failed "to properly subpoena the correct HUD supervisory personnel, and HUD personnel that conducted the annual audits." *Id.*, ¶¶ 3,4,6.[3]

### Analysis

This claim of ineffective assistance fails principally for the reasons stated *supra* in connection with counsel's failure to subpoena a Metro supervisor. It is useful to add that Carol Maitland was the government's first witness at trial. Her testimony covers Tr. 58-380. Maitland was at that time employed by HUD as a chief project manager, supervising "a team of about 13 people," whose responsibility was "to monitor the way owners and managers maintain their buildings and their records and to evaluate and review their compliance with HUD's housing regulations." Tr. 59.

---

[3] One of these quotations is from Saneaux's separate complaint of prosecutorial misconduct, specifically, that the prosecutors misrepresented to the jury that Maitland was the HUD supervisor in charge of monitoring Metro and the staff at Andrews Plaza at the times alleged in the indictment, when Saneuax was soliciting and receiving bribes from applicants for apartments.

Based on her rank and experience, Maitland was able to give the jurors admissible and, from their point of view, indispensable background information about how the HUD-funded subsidized apartment program functioned, with particular references to the application protocols and the documents generated thereby. Maitland testified, both on direct and cross examination, about how entries in the waiting list log maintained by Saneaux should be interpreted. She was competent to give that testimony. No one suggested otherwise. As her testimony neared its completion, I said to the jury:

> Ms. Maitland is in a position to describe, for all of us, the nature of the statute, the nature of the regulations, the manner in which these projects and these programs are administered. She has been able to identify a considerable number of documents and testify about them. It is a necessary exposition of facts for you to understand the case. . . . . [I]f a musical analogy is permissible, . . . [w]hat you're hearing from Ms. Maitland's lips is, in a sense, the overture. The opera will be sung by a different cast of singers, and it's a relatively long overture to be followed by a relatively brief opera. Do you see what I mean? Usually, it's the reverse.

Tr. 312. That "different cast of singers," the government's next witnesses, had actual knowledge of Saneaux's activities while managing Andrews Plaza and testified about them. Saneaux's charge that the government misled the jury about the timing and nature of Maitland's conduct as a HUD supervisor finds no support in the record. On the contrary, the prosecutor said in summation: "Carol Maitland didn't come here and try and tell you that she knew anyone was taking bribes; she didn't know anything about that. All she told you was [what] she knows from her training and experience, some 40-odd years on the job at HUD, and her review of the records at Andrews Plaza." Tr. 1253. That is a fair summation of Maitland's testimony, and there is nothing to suggest that the jurors viewed it in any other light. The prosecutors never suggested that Maitland was the supervisor on

the Andrews Plaza scene during the events described in the superseding indictment. There is no substance to Saneaux's claim to that effect, and no basis for concluding that defense counsel's choosing not to subpoena other HUD representatives constituted ineffective assistance. That is particularly true since, as the government brought out on Maitland's redirect examination, it was not HUD's role to "review applicant information" or "screen applicants at Andrews Plaza directly." Tr. 333.

### III. CONCLUSION

Saneaux's claims for relief under 28 U.S.C. § 2255, to the extent they are not coupled or intertwined with a claim of ineffective assistance of counsel, are precluded by his failure to raise those issues on direct appeal.

To the extent that Saneaux seeks relief on the basis of ineffective assistance of trial counsel, those claims fail under the governing law.

Accordingly, Saneaux's motion for relief under § 2255 is DENIED.

It is SO ORDERED.

Dated: New York, New York

December 7, 2009

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE